USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/27/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COSGROVE,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>COLUMBIA CARE INC., *et al.*,<br><br>　　　　　　　　　Defendant. | 23-cv-09562 (ALC)<br><br>**<u>ORDER</u>** |

**ANDREW L. CARTER, JR., United States District Judge:**

The Court considers herein Defendants' motion to dismiss Mark Cosgrove's ("Plaintiff") First Amended Complaint. For the reasons discussed below, Defendants' motion to dismiss is **GRANTED without prejudice**.

## BACKGROUND

### I.　　Procedural Background

Plaintiff filed the initial complaint in this action on October 31, 2023. ECF No. 1. Plaintiff then amended the complaint prior to Defendants' filing of a responsive pleading pursuant to Fed. R. Civ. P. 15. ECF No. 14 ("FAC"). Defendants filed the motion to dismiss considered herein on January 22, 2024. ECF No. 21, 20 ("Mot."). Plaintiff submitted his opposition on February 5, 2024, ECF No. 26 ("Opp."), and Defendants filed a Reply brief on February 12, 2024. ECF No. 27 ("Reply").

### II.　　Factual Background

The follow facts are drawn from the FAC and are taken as true as is necessary at the present stage of this litigation. The Florida legislature passed the Compassionate Use Act in 2014, which created a legal medical marijuana program. FAC at ¶ 8. Under the legislative scheme, a limited number of cannabis operation licenses would be issued across the state. *Id.*

Defendants, Columbia Care Inc. and Columbia Care LLC, large multi-state cannabis operators, wanted into the market. *Id.* at ¶¶ 1, 9. Plaintiff, at Defendants' request, facilitated connections between Defendants and local Florida nursery owners and helped them pursue regional licenses in Central and South Florida. *Id.* at ¶ 9. Plaintiff alleges that, during this process, Defendants made representations to him that Plaintiff would be granted a paid seat on the company's Florida subsidiary, granted equity in the subsidiary, and provided additional bonus compensation if Defendants obtained a cannabis license in the state. *Id.* at ¶ 11.

Despite his best efforts, Plaintiff was unable to help Defendants obtain a license for approximately eight months. *Id.* at ¶¶ 11-12. The Parties' luck later changed though as a potential licensing partner suddenly emerged. A local operator, Sun Bulb farms, was able to obtain an additional license from the state through its own litigation efforts. *Id.* at ¶ 13. Upon obtaining the license though, Sun Bulb's operational and financial partners backed out of the business, leaving Sun Bulb in need of new business partners. *Id.* at ¶ 14. A mutual friend connected Plaintiff with Sun Bulb's principal and Plaintiff was able to pitch Defendants as a potential operational partner. *Id.* at ¶¶ 16-18. Plaintiff made the pitch to Sun Bulb from Florida and then subsequently met with Defendants' principal in New York to present the opportunity to them. *Id.* at ¶ 18. Defendants' principal requested that Plaintiff set up a meeting with Sun Bulb's leadership and the meeting occurred a week later in Florida. *Id.* at ¶ 19. Following this meeting, Defendants' principal told Plaintiff that, if the deal were to go through, he would be compensated for his efforts in accordance with the same terms he had previously been presented. *Id.*

Defendants, alongside several others, made an offer to partner with Sun Bulb. *Id.* at ¶ 20. A Sun Bulb official reached out to Plaintiff while considering the competing offers and inquired about Defendants' financial readiness and operational planning. *Id.* at ¶ 21. Plaintiff answered

the official's questions and recommended moving forward with Defendants. *Id.* at ¶¶ 21-23. The official communicated Sun Bulb's interest in moving forward with Defendants' offer to Plaintiff and Plaintiff then relayed the interest to Defendants. *Id.* at ¶ 24. Upon hearing this from Plaintiff, Defendants reiterated that Plaintiff would be compensated for his assistance in substantially the same manner contemplated in the original offer and that Defendants would "take care of" Plaintiff. *Id.* at ¶¶ 24-25.

Plaintiff was diagnosed with and underwent treatment for cancer during the remainder of the negotiations between Defendants and Sun Bulb. *Id.* at ¶¶ 26-27. Despite this, Plaintiff continued to reassure Sun Bulb's principal that Defendants were the appropriate business partner. *Id.* at 27. The transaction ultimately closed and was valued at approximately $16 million and provided for Defendants to invest $25 million into expanding operations in Florida post-closing. *Id.* at ¶¶ 28-29. Based upon a typical investment banking fee of 5%, Plaintiff alleges that he ought to have been compensated between $800,000 and $2,000,000 for his efforts. *Id.* at ¶ 30.

Following the transaction, Sun Bulb was reorganized and absorbed into Defendant as part of its initial public offering. *Id.* at ¶ 31. Plaintiff reached out to Defendants regarding his compensation because, as previously mentioned, a portion of his compensation was to take the form of stock in the entity being reorganized. *Id.* at ¶ 32. Plaintiff was then informed that he would be compensated after the IPO and accepted these terms. *Id.* at ¶ 33. Around this time, a member of Defendants' board of directors reached out to Plaintiff and asked him not to sue the company in advance of the IPO and reaffirmed that Plaintiff would be paid for his work. *Id.* at ¶ 34.

Plaintiff subsequently reached out after the IPO regarding his compensation and was told that Defendants' stock price needed to increase in order to compensate Plaintiff. *Id.* at ¶ 36.

Plaintiff again relied on these statements. *Id.* at ¶ 37. Despite further subsequent requests for compensation, Plaintiff was not paid for his work. *Id.* at ¶ 38. Defendants informed Plaintiff in November 2019 that he would not be compensated for his efforts. *Id.* at ¶ 39. Plaintiff now brings the following causes of action against both Defendants: (1) breach of oral contract, (2) unjust enrichment, (3) promissory estoppel, (4) fraudulent misrepresentation, and (5) negligent misrepresentation. *Id.* at 7-10; 16-20.

## LEGAL STANDARD

### I.     Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a

trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II. Choice of Law

"It is axiomatic that a federal court sitting in diversity follows the choice of law principles of the state of its situs." *Reeves v. American Broadcasting Companies, Inc.*, 719 F.2d 602, 605 (2d Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941)). Under New York law, "the court must first determine whether there is an actual conflict between the jurisdictions' laws for each, before engaging in a choice of law analysis." *Freedom Holding, Inc. v. Haart*, 2022 NY Slip Op 22225, ¶ 2, 76 Misc. 3d 746, 753, 172 N.Y.S.3d 873, 880 (Sup. Ct.) (citing *Elson v. Defren*, 283 A.D.2d 109, 114, 726 N.Y.S.2d 407, 411 (App. Div. 1st Dept. 2001)).

Courts considering choice of law questions in contract disputes must apply "'[t]he law of the jurisdiction having the greatest interest in the litigation . . . , provided that the jurisdiction possessed sufficient contacts with the litigation." *Fort Howard Paper Co.v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986). Factors relevant to the sufficient contacts inquiry for contract actions include: "(1) the place of contracting; (2) the place of contract negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile of the contracting parties." *Sabella v. Scantek Med., Inc.*, 2009 U.S. Dist. LEXIS 88170, at *34 (S.D.N.Y. Sep. 21, 2009) (citing N.Y. Jurs. 2d, Conflicts of Law § 37). To determine which jurisdiction has the greater interest in the resolution of the action, courts "may also consider public policy where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (citing *In re Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 227

(1993); *see also Spink & Son v. Gen. Atl. Corp.*, 167 Misc. 2d 120, 637 N.Y.S.2d 921 (Sup. Ct. 1996) (considering whether New York had a greater interest in the application of its public policy vis-à-vis a foreign sovereign). Courts within this state and Circuit have repeatedly found that New York state has a "paramount interest" in the enforcement of its statute of frauds in cases involving oral finder's fee contracts. *Fort Howard Paper Co.* 787 F.2d at 790 (upholding the application of New York law in a suit between an in-state agent seeking to recover a finder's fee against an out-of-state defendant); *see also id.* at 789 ("[A]ny contract to pay compensation for services rendered in . . . negotiating the purchase, sale [or] exchange of a business opportunity . . . is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . There is no doubt that [the statute of frauds] bars oral finder's-fee contracts."); *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 322 (S.D.N.Y. 2001) (making the same finding in an oral finder's fee dispute between a California plaintiff and New York defendant because "New York has a strong concern over (oral) agreements to pay finder's fees") (citing *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 383, 300 N.Y.S.2d 817, 826, 248 N.E.2d 576, 582 (1969)).

"The New York Court of Appeals has held that the relevant analytical approach to choice of law in tort actions in New York is the interest analysis." *Globalnet Fin..com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am. Inc.*, 65 N.Y.2d 189, 197 (1985) (cleaned up). The interest analysis requires "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* (citing *Miller v. Miller*, 22 N.Y.2d 12, 15-16 (1968)). The interest analysis for most tort actions distinguishes torts involving "the appropriate standards of conduct, rules of the

road, for example," from those "allocating losses that result from admittedly tortious conduct." *Mascarella v. Brown*, 813 F. Supp. 1015, 1019 (S.D.N.Y. 1993) (internal quotation omitted). Where conflicting conduct-regulating laws are at play, the law of the state where the tort occurred will apply. *Id.* If the conflict involves loss-allocation, then "the site of the tort is less important, and the parties' domiciles are more important." *Globalnet Financial.com Inc.*, 449 F.3d at 384. The tort of unjust enrichment bucks this general trend as "[w]hether to apply . . . New York's "center of gravity" choice of law test applicable to contract disputes, or New York's interest analysis applicable to tort claims, is a matter of debate among district courts in this Circuit." *Gerloff v. Hostetter Schneider Realty*, 2014 U.S. Dist. LEXIS 37648, at *25 (S.D.N.Y. Mar. 20, 2014) (cleaned up). Nevertheless, unjust enrichment claims based upon an alleged fraudulent conveyance is "more like a tort than a breach of contract for choice of law purposes." *Id.* (collecting cases).

## DISCUSSION

I. **Choice of Law**

  a. **Breach of Contract & Quasi-Contract Claims**

The breach of contract statute of frauds provisions of New York and Florida do in fact conflict under these circumstances. N.Y. Gen. Oblig. Law § 5-701(a)(10) (Consol., Lexis Advance through 2024 released Chapters 1-225) states that "a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest" is unenforceable and void unless

written. Fla. Stat. Ann. § 725.01 contains no similar provision and neither side alleges that any portion of Florida's statute of frauds could apply to bar this action.

It is clear from the facts pleaded in the First Amended Complaint that both New York and Florida have sufficient *contacts* with this action. As Plaintiff informs this Court, Defendants are headquartered in New York and Plaintiff is domiciled in Florida, the Parties exchanged correspondences between Florida and New York as Plaintiff sought out an acquisition target for Defendants, Plaintiff traveled to New York on at least one occasion in order to meet with Defendants to pitch Sun Bulb as a potential target and Defendants traveled to Florida to meet with Plaintiff and Sun Bulb. Additionally, as Plaintiff himself acknowledges in his opposition filing, "[c]ontracting activity and negotiations occurred in both Florida and New York," further supporting a conclusion that both states have sufficient contacts with this dispute. Opp. at 4; *see also Merex A.G. v. Fairchild Weston Systems*, 810 F. Supp. 1356, 1366 (S.D.N.Y. 1992) (finding New York had sufficient contacts in a contract dispute "where the parties negotiated key provisions in this jurisdiction, the defendant resided in this state, and the case was brought here") (citing *Intercontinental Planning*, 24 N.Y.2d at 383-384).

It is also clear from the facts pleaded in the First Amended Complaint that New York has the greater *interest* in the application of its law to the contract claims. Defendants point to decisions throughout this state and Circuit which have consistently found that application of New York law to oral finder's fee contracts is appropriate so long as sufficient contacts exist with the litigation. *See, e.g.*, Mot. at 6-7 (collecting cases). As the Second Circuit in *Ft. Howard Paper Co. v. William D. Witter, Inc.* held, New York state has a substantial interest in "reduc[ing] the substantial number of unfounded and multiple claims for commissions asserted by finders." 787 F.2d at 790. This interest has been particularly compelling "in light of New York's traditional

role as 'a national and international center for the purchase and sale of business' and its position as 'an international clearing house and market place.'" *Id.* (citing *Intercontinental Planning, Ltd.*, 24 N.Y.2d at 383). This substantial interest is not diminished by the fact that Plaintiff was an out-of-state broker approached by a New York entity for referral services. New York has just as substantial an interest in the reduction of such claims and the maintenance of the state's role as a transactional clearing house regardless of the citizenship of the parties. The case of *Sugerman v. MCY Music World, Inc.* makes clear that the application of New York law upon out-of-state plaintiffs against in-state defendants is appropriate. 158 F. Supp. at 322. There, as here, an out-of-state broker sought to recover on an oral finder's fee contract with an in-state defendant and was barred from doing so by the New York statute of frauds. In dismissing Plaintiff's cause of action, the *Sugerman* Court relied upon the very same precedent mentioned herein finding that New York's paramount interest in such cases requires the application of its law to the case.

      Plaintiff's arguments in favor of finding that Florida has the greater interest are insufficient. Plaintiff references this Court's prior decision in *Weihai Textile Grp. Imp. & Exp. Co. v. Level 8 Apparel, LLC* which noted that "the traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in" determining what forum has the greater interest in a dispute. 2014 U.S. Dist. LEXIS 53688, at *19-20 (S.D.N.Y. Mar. 28, 2014) (hereafter *Level 8*). Plaintiff goes on to argue that an analysis which accords these factors their due "heaviest weight" must result in a determination that Florida law controls because the subject matter and location of performance of the contract was there. Opp at 3-5. However, as stated previously, Plaintiff himself acknowledges that several of the "traditional choice of law factors" favor both New York and Florida. *Level 8* at *19. "Cosgrove is a Florida citizen and resident; Defendants are New York residents. At best, this factor is neutral. Contracting activity

and negotiations occurred in both Florida and New York, and thus this factor does not favor either state." Opp at 4. While Plaintiff is correct that the majority of the locus of performance was in Florida, that alone is not controlling where, as here, several other traditional factors point to both states' respective interests. What's more, *Level 8* itself notes that "New York courts may also consider public policy where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." *Level 8* at *19 (quoting *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030-1031 (2d Cir. 1996)). As stated previously, New York's underlying governmental interests at play here are readily identifiable and reflect deeply held governmental interests that counsel in favor of the application of its laws. Plaintiff does not present similarly strong and readily identifiable governmental interests which Florida holds that suggest their law ought to apply beyond that state's general interest in "redressing harm done to its citizens." Opp. at 7.

Despite Plaintiff's arguments to the contrary, there also do not presently exist disputes of fact which preclude dismissal under New York's statute of frauds. The Court's conclusion of law as to the applicability of New York's law on the contract claims is based entirely upon the facts as Plaintiff himself has alleged. Further, Plaintiff's attempts to place this case without the ambit of New York's statute of frauds via *Sussex Leasing Corp. v. US W. Fin. Servs., Inc.* is unsuccessful. 877 F.2d 200 (2d Cir. 1989). *Sussex* was a case in which the district court had granted summary judgment in the defendant's favor based upon a finding that the plaintiff was acting as a finder rather than as a principal in the transaction at issue. *Id.* at 202. The Circuit reversed the District Court based upon a finding that the plaintiff had presented a triable question of fact as to whether they were a finder. *Id.* at 203. The Court's decision was based upon a finding that the evidentiary record "contain[ed] evidence suggesting that [the plaintiff] may have

assumed obligations and run risks" such that the statute of frauds did not apply. *Id.* This evidence included numerous references to and communications involving a loan and security interest that the plaintiff and acquisition target discussed assigning to one another rather than merely to the defendant-acquiror. *Id.* Far short of even alleging that he took on such an "obligation" or had such a "*bona fide* interest," Plaintiff merely alleges that he was owed stock compensation and a board seat in return for his services rendered. *Id.* (citing *Yonofsky v. Wernick*, 362 F. Supp. 1005, 1029 (S.D.N.Y. 1973). These allegations are insufficient to allege that the statute of frauds does not apply in this case.

Finally, the Court finds that the statute of frauds applies to all of Plaintiff's quasi-contract claims. Plaintiff's unjust enrichment is barred by the statute of frauds as a matter of law as they are predicated upon the very same finder's fee issues as his breach of oral contract claim. *See Snyder v. Bronfman*, 2009 NY Slip Op 8667, ¶ 1, 13 N.Y.3d 504, 506 ("We hold that quantum meruit and unjust enrichment claims brought to recover the value of plaintiff's services in helping to achieve a corporate acquisition are barred by the statute of frauds contained in General Obligations Law § 5-701 (a) (10)."). The equitable and promissory estoppel claims must also fail because Plaintiff has not pleaded an "unconscionable injury . . . beyond that which flows naturally . . . from the non-performance of the unenforceable agreement" as is necessary under state law. *CMC Transaction Servs., LLC v. IDEX Corp.*, 2019 U.S. Dist. LEXIS 129083, at *9 (S.D.N.Y. Aug. 1, 2019) (citing *Merex A.G. v. Fairchild*, 29 F.3d 821, 826 (2d Cir. 1994)) (internal citations omitted).

    b. **Tort Claims**

For conduct regulating torts such as fraudulent and negligent misrepresentation, the law of the jurisdiction where the tort occurred will generally apply. *See In re Thelen LLP*, 736 F.3d

213, 219 (2d Cir. 2013).  Where, as here, tortious conduct arises in more than one jurisdiction and injuries are suffered in another, "the situs of the tort is where the last event necessary for liability occurred."  *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195 (N.Y. 1985)).  Where the application of this rule "is at war with state interests," then "more general principles of interest analysis apply."  *MasterCard Int'l Inc. v. Nike, Inc.,* 164 F. Supp. 3d 592, 605 (S.D.N.Y. 2016) (internal quotation marks omitted).

The last event for liability in this case is the financial harm which Plaintiff alleges he suffered in Florida.  Nevertheless, this fact is not outcome-determinative where, as here, New York courts have consistently held that misrepresentation claims must be dismissed where they are "duplicative of the unenforceable breach of contract cause of action and, thus, constitute an impermissible attempt to circumvent the statute of frauds."  *MacKay v. Paesano*, 2020 NY Slip Op 04155, ¶ 2, 185 A.D.3d 915, 916 (App. Div. 2nd Dept.) (citing *Martin Greenfield Clothiers, Ltd. v. Brooks Bros. Grp., Inc.*, 2019 NY Slip Op 062225, 175 A.D.3d 636 (App. Div. 2nd Dept.)).  Plaintiff alleges merely that Defendants "made statements to [him] that [they] would compensate him for his work related to the Florida transaction" all the while knowing that they did not intend to do so or acting negligently as to their lacking intent to do so.  FAC at ¶¶ 126-130, 134-138.  Whereas "a misrepresentation of material fact, [that] is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud," this alleged misrepresentation is a "mere misrepresentation of an intent to perform under the contract is insufficient to sustain a cause of action to recover damages for fraud."  *Gorman v. Fowkes*, 2012 NY Slip Op 5614, ¶ 1 (App. Div. 2nd Dept.) (citing *Selinger Enters., Inc. v. Cassuto*, 2008 NY Slip Op 3191, ¶ 2 (App. Div. 2nd Dept.)).  Because New York has the greater interest in the

application of its laws, "New York law governs the . . . misrepresentation claim[s]." *Jakubiak v. Quantumscape Corp.*, 2021 U.S. Dist. LEXIS 222177, at *16 (S.D.N.Y. Nov. 16, 2021).

## II.     Leave to Amend

Rule 15 directs courts to "freely give leave" to amend or replead claims "when justice so requires." Fed. R. Civ. P. 15(a)(2). Granting leave to amend upon granting a motion to dismiss is the "usual practice" in this Circuit, and, as such, Plaintiffs are granted leave to further amend their Complaint. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446-47 (S.D.N.Y. 2014) (internal citations omitted).

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is **GRANTED** without prejudice. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 21. Plaintiffs are hereby **ORDERED** to file their amended complaint with the Court within 21 days of the issuance of the instant Order.

**SO ORDERED.**

**Dated:  September 27, 2024**
         **New York, New York**                      **ANDREW L. CARTER, JR.**
                                                     **United States District Judge**